UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Stephen Bain,
        Plaintiff,

        v.                                        Civil Action No. 2:06-CV-217

Dr. Paul Cotton, Steven Gold, Robert
Hofmann, Otter Creek Associates,
William Cote, Mimi Francis,
and unknown mental health care
providers,
        Defendants.

# REPORT AND RECOMMENDATION
(Doc. 143)

Plaintiff Stephen Bain, a Vermont inmate proceeding *pro se*, brings this action claiming that he received inadequate mental health care at the outset of his incarceration. Currently pending before the Court is a motion to dismiss filed by defendant Mimi Francis, arguing for dismissal on the ground that Bain's amended complaint violates a specific order of the Court. For the reasons set forth below, I recommend that the motion to dismiss be DENIED.

## Factual and Procedural Background

Bain was arrested in May 2003, and was subsequently incarcerated at the Marble Valley Correctional Facility in Rutland, Vermont. In the years prior to his arrest, he had reportedly sustained "serious head and spinal injuries" in "multiple automobile accidents," resulting in "serious chronic pain, as well as symptoms of traumatic brain injury." (Doc. 4 at 2.) For treatment of these conditions, his doctors had prescribed

narcotic pain medications and Valium. Upon his arrival in state custody, however, Bain was allegedly denied medication for his chronic pain. In addition to his untreated pain, he began to suffer symptoms of withdrawal. *Id.* at 3. Despite his alleged suffering, he claims that he was never offered any form of detoxification treatment.

In late June 2003, Bain was transferred to a facility in Windsor, Vermont. There, he was provided a psychiatric evaluation by Dr. Paul Cotton. Bain's recollection of his meeting with Dr. Cotton is that he informed the doctor of "his withdrawal condition, as well as the fact that he was suffering from severe chronic pain, extreme anxiety, deep depression and the symptoms of traumatic brain injury." *Id.* at 4. Dr. Cotton allegedly responded that these were "medical issues" and thanked him for "stopping by." *Id.* Similarly, Bain reportedly made Dr. William Cote "aware of [his] tenuous situation," but Dr. Cote "offered no meaningful help or treatment." *Id.* Accordingly, Bain claims that his treatment in prison amounted to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

On October 10, 2008, nearly two years after his initial complaint was filed, Bain filed a motion to add psychiatric nurse Mimi Francis as a party. He claims that, like Drs. Cotton and Cote, Francis was aware of his pain symptoms but failed to "render any medically indicated intervention." (Doc. 99 at 4.) The Court granted the motion to amend. (Doc. 103.)

Bain subsequently filed an amended complaint naming Francis and several other new individuals as defendants. (Doc. 112.) With the exception of Francis, none of the

2

new defendants had been approved by the Court for amendment. Bain also included an Americans with Disabilities Act claim that had been specifically disallowed by the Court in a prior order. Accordingly, the defendants filed a joint motion to strike the amended complaint. (Doc. 114.)

On May 11, 2009, the Court granted the motion to strike, but allowed Bain another opportunity to amend his complaint to add Francis as a party. In doing so, the Court warned that "[t]he pleading may not include any other new claims or parties. Attempts to amend beyond what has been allowed by the Court will likely result in dismissal of Francis from the case and other sanctions." (Doc. 133 at 24.)

On June 1, 2009, Bain filed an amended complaint in which he alleges, *inter alia*, that "[t]he herein named and unnamed individuals *conspired to withhold medical/mental health services from the Plaintiff* and engaged in practices that constitute[d] deliberate indifference to his serious medical/mental health needs . . . ." (Doc. 135 at 4) (emphasis added.) Earlier in the case, the Court denied Bain's motion to amend to add a conspiracy claim, calling the proposed claim "insufficiently supported." (Doc. 57 at 8.) Noting the Court's prior ruling, as well as its more recent warning that the amended complaint must not include new claims, defendant Francis argues that Bain is trying to bring a new conspiracy claim. Francis also argues that Bain's renewed request for counsel, set forth in the prayer for relief section of his amended complaint (Doc. 135 at 9), constitutes a second new claim. As a sanction for these alleged violations, Francis asks for the dismissal of all claims brought against her.

3

In response to Francis's motion, Bain contends that his reference to a conspiracy was not an attempt to bring a new claim. Instead, he argues, the conspiracy reference merely characterizes the fact that the defendants' actions were "the continuing proximate cause of the foreseeable injury . . . . The before mentioned did not occur in a vacuum. They are intentional entity methods and culture of common practice. They are entities [sic] regular way of doing business." (Doc. 146 at 2.)

## **Discussion**

When it comes to *pro se* litigants, the Second Circuit requires courts to act with "special solicitude." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Such solicitude, however, focuses on construing pleadings and enforcing compliance with procedural rules. *Id.* A party's *pro se* status does not constitute a license for willful noncompliance with substantive court orders. *See Gillum v. Nassau Downs Regional Off Track Betting Corp.*, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005); *Hall v. Flynn*, 829 F. Supp. 1401, 1402 (N.D.N.Y.1993) (A *pro se* litigant "who continues to demonstrate a lack of due diligence in the face of clear warnings[ ] will only be afforded so much latitude.").

Here, Bain is walking a fine line. If he is in violation of the Court's order, his violation is more substantive than procedural. However, and particularly given his *pro se* status, it is difficult for the Court to say that his violation was willful. His reference to a conspiracy, although troubling in light of the Court's explicit order, does not necessarily constitute a separate claim or cause of action. It could, as he suggests, be read as merely

4

a characterization of the general conduct underlying a broader constitutional claim. Such a reading is particularly reasonable given the fact that the amended complaint is 10 pages long, with numerous amendments to the text, and yet the word "conspiracy" is used only once. (Doc. 135.)

With respect to the plea for appointed counsel, the only change from the original complaint is a request that the Court require the defendants to reimburse the Plaintiff for his out–of-pocket expenses related to the litigation. *Id.* at 9. As Bain may be entitled to such costs under Fed. R. Civ. P. 54(d)(1), the Court does not view this as an additional claim.

Aside from the Court's prior order, Francis does not cite any specific authority for imposing a sanction of dismissal. Fed. R. Civ. P. 41(b) allows for sanctions when a Court order has been violated, but the case law calls dismissal under Rule 41(b) a "harsh remedy" to be reserved for "extreme circumstances." *Lewis v. Rawson*, 564 F.3d 569, 575-76 (2d Cir. 2009) (requiring a "showing of willful default" before a party could be denied a "fair day in court"); *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998). A Rule 41(b) analysis also requires a review of several factors, including prejudice to the defendants and a balancing of docket management with the plaintiff's interest in receiving a fair chance to be heard. *See United States ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

Certainly, the Court will not construe the amended complaint as alleging a cause of action for conspiracy. If the Court and the parties accept Bain's explanation and construe

5

his reference to a conspiracy as merely descriptive, no sanction is warranted. Moreover, under a Rule 41(b) analysis, Francis has not pointed to any specific prejudice arising out of Bain's conduct. With regard to docket management, dismissal of Francis would have little impact since several defendants would remain in the case. Accordingly, Bain's right to have his claims against Francis heard outweighs any Court administrative interest. I therefore recommend that the motion to dismiss be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Mimi Francis's motion to dismiss (Doc. 143) be DENIED.

Dated at Burlington, in the District of Vermont, this 6th day of November, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).