UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Stephen Bain,
    Plaintiff,

v.                                                         Civil Action No. 2:06-CV-217

Dr. Paul Cotton, Steven Gold,
Robert Hofmann, William Cote,
Mimi Francis, Matrix Psychological
Service, and Unknown Mental
Health Care Providers,
    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 180, 181, 182, 184, 185 and 195)

Plaintiff Stephen Bain, a Vermont inmate proceeding *pro se*, brings this action claiming that he received inadequate medical care at the outset of his incarceration. Currently pending before the Court are summary judgment motions filed by various defendants. Also before the Court is Bain's motion for extension of time to file responses. The summary judgment motions have been pending for nearly six months.

For the reasons set forth below, the motion for extension of time is DENIED, and I recommend that the Court GRANT the defendants' motions and DISMISS this case.

### Factual Background

The following facts are undisputed unless otherwise indicated. Bain was arrested in May 2003 and incarcerated at the Marble Valley Correctional Facility in Rutland, Vermont. His amended complaint alleges that in the years prior to his arrest, he sustained

"serious head and spinal injuries" in "multiple automobile accidents," resulting in "serious chronic pain, as well as symptoms of traumatic brain injury." (Doc. 135 at 4.) For treatment of these conditions, his doctors allegedly prescribed narcotic pain medications and Valium. Bain asserts that immediately after his arrest, the defendants failed to provide him with appropriate treatment, either for his chronic pain or for detoxification from the narcotics. *Id.* at 4-5.

Specifically, Bain claims that while incarcerated at Marble Valley he was seen by psychiatric nurse practitioner Mimi Francis. He claims that he told Francis about his need for medical treatment, but that Francis "failed to act." Francis now moves for summary judgment, claiming that she never met with Bain at Marble Valley. In support of her motion, she has submitted medical records from the period of time in question. The records contain no notes from Francis, and do not refer to her as a provider. (Doc. 180-3 at 1-10.)

In late June 2003, Bain was transferred to a prison facility in Windsor, Vermont. On July 6, 2003, he was provided a psychiatric evaluation by Dr. Paul Cotton. Bain's recollection of his meeting with Dr. Cotton is that he informed the doctor of "his withdrawal condition, as well as the fact that he was suffering from severe chronic pain, extreme anxiety, deep depression and the symptoms of traumatic brain injury." (Doc. 135 at 6.) Dr. Cotton has submitted an affidavit in which he states that during the examination, Bain's mood, affect, and thought processes all appeared to be normal. (Doc. 181-2 at 2.) With respect to Bain's claims of chronic pain and lack of detoxification, Dr. Cotton attests that he met with Bain 44 days after Bain's arrest, and that "it is virtually impossible that he

2

would have been experiencing medical [e]ffects of withdrawal from these drugs or detoxification from the use of these drugs 44 days later." *Id.* at 1. Dr. Cotton also explains that withdrawal from narcotics is a medical issue "that would be handled exclusively by the medical staff." *Id.* at 2. Regarding Bain's claim that his pain was not properly treated, Dr. Cotton states that "[a]s a psychiatrist, I had no duty or obligation to advocate with the medical staff on behalf of Mr. Bain to get narcotics or Valium in July, 2003." *Id.*

Bain was subsequently sent to a prison facility in Newport, Vermont, where he was seen by psychiatric nurse practitioner William Cote. Bain claims that he explained his pain issues to Cote, but that as with Nurse Francis and Dr. Cotton, Cote did not provide medication and declined to advocate on Bain's behalf. At summary judgment, Cote has submitted an affidavit stating, *inter alia*, that it would have been inappropriate for him to either prescribe narcotics for an inmate or advocate for the provision of narcotics. (Doc. 183-5 at 4.) He also avers that he encouraged Bain to follow up with prison medical services for pain management, and inquired as to whether Bain would be interested in a trial of anti-depressants. Bain allegedly declined Cote's offer of medication. *Id.* at 3.

Bain alleges that in late November 2003, he was transferred to a prison facility in Springfield, Vermont. He claims that there, as in previous prison facilities, he was characterized as "drug seeking" and not provided adequate medical care. He also claims that defendant Cote continued to play a role in his care, and failed to ensure treatment under prevailing standards of medical practice. (Doc. 135 at 7-8.)

In summarizing his claims, Bain contends that Dr. Cotton and the other defendants

3

fostered a "culture" that allowed for deliberate indifference to serious medical needs. Defendants Francis, Cotton, Cote and Matrix Psychological Services contest this claim, arguing that Bain has failed to provide evidence of either a serious medical need or deliberate indifference. They further argue that without an expert, Bain cannot prove that his medical care fell below prevailing standards.

Former DOC Commissioners Gold and Hofmann have also moved for summary judgment. These defendants argue that Bain has failed to show an Eighth Amendment violation, that they were not personally involved in any alleged wrongdoing, and that the facts set forth in the amended complaint do not support a claim of supervisor liability.

## Discussion

I.    **Motion for Extension of Time**

Bain has asked the Court for additional time in which to respond to the pending motions for summary judgment, claiming that he has not been allowed adequate access to the prison library and computers. When Bain filed his motion for extension of time, the summary judgment motions had been pending for over five months. The defendants have opposed the motion, arguing that it lacks substantive merit, is untimely, and fails to show excusable neglect.

The defendants filed their motions for summary judgment between December 24 and December 30, 2009. (Docs. 180, 181, 182, 184 and 185.) On January 6, 2010, Bain moved for a preliminary injunction, claiming that he was being denied adequate access to the law library and that he was unable to access certain computer files. He also claimed that because he had several cases pending in state and federal courts, he should be allowed

4

special access to the prison law library.

Defendants Gold and Hofmann opposed the motion. In support of their opposition, they submitted an affidavit from the DOC's Director of Legal Education / Inmate Access to Courts, who asserted that Bain was being provided access to legal resources consistent with DOC policies, that inmates were provided at least 12 hours of access to the law library per week, and that Bain was "not entitled to additional access to legal resources solely by virtue of the volume of litigation he has filed against the Department." (Doc. 192-2 at 2, 7-8.)

The Court denied Bain's motion, finding that he had failed to establish a likely constitutional violation with respect to his access to the courts, and that he had failed to show an actual injury. (Docs. 193 and 194). Nonetheless, in its order of April 14, 2010, the Court granted Bain 30 days in which to respond to the pending motions. Consequently, Bain's oppositions were due on May 14, 2010.

Bain did not comply with the Court's deadline. Instead, on June 1, 2010, he moved for additional time, citing "the reasons recited there within Plaintiff's Motion for Injunctive Relief," his work schedule, and the defendants' alleged efforts to interfere with his access to library and computer resources. (Doc. 195 at 1). Those efforts allegedly included allowing him four hours of computer access per week, and "little or no access to a law library or the resources thereof." *Id.* In support of his motion, Bain has submitted a series of communications with DOC officials, the most recent of which is dated April 11, 2010. (Doc. 195-1 at 14.) Bain does not specify how much time he would need to provide responses, asking only that the Court grant "an extension of time in this matter

5

sufficient to accommodate his schedule, other deadlines, and [to] research and draft his response . . . ." *Id.*

When the Court sets a deadline and a party moves for additional time, the Court may allow additional time "for good cause." Fed. R. Civ. P. 6(b)(1)(A). However, when a motion for extension of time is filed after the deadline has passed, the moving party must show "excusable neglect." Fed. R. Civ. P. 6(a)(1)(B). The determination whether a party's neglect is "excusable" is, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In making that determination, the Supreme Court has directed courts to consider the following factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* The Second Circuit has held that the third factor -- the reason for the delay, and whether it is within the reasonable control of the movant -- is the most important, since the other three factors will often favor the movant. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003).

Here, Bain filed his motion for extension of time approximately two weeks after his response time had expired. The Court therefore applies the "excusable neglect" standard to his motion. When the Court granted Bain until mid-May 2010 to file his opposition papers, it essentially granted him an extension of several months. The case itself has been pending since 2006. Because Bain did not specify how much additional time he might

6

need, it is difficult to measure the prejudice to the defendants. It is plain, however, that this case has already met with significant delay.

Bain claims that the delay has not been within his control, and has instead occurred because the DOC has not allowed him adequate access to legal materials and computers. He concedes, however, that he has been allowed weekly access to library facilities, and according to the DOC, no less library time than other inmates. In response to Bain's initial claims, the Court effectively extended his 30-day response deadline approximately 100 additional days. It is not clear now why such a significant extension was not more than adequate to meet his needs.

The Court thus finds that Bain had ample time in which to compose responses to the defendants' motions for summary judgment, and that additional time is not warranted. Given the significant response time already allowed by the Court, drafting a proper response was plainly within Bain's control, and his open-ended request for additional time is not adequately supported. The motion for extension of time is therefore DENIED.

## II. Summary Judgment

Summary judgment should be granted when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden to show the absence of disputed material facts by informing the Court of portions of pleadings, discovery and disclosure materials which support the motion. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then set forth facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). In deciding whether to grant summary

judgment, the trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party, and decide whether a rational juror could decide in favor of that party under applicable law. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). In other words, only "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

When, as here, a party seeks dismissal or summary judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *see also Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally.'") (citations omitted)). Also, when a motion for summary judgment is unopposed, the court cannot simply grant the motion. "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citations omitted). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue

8

for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [statement of material facts.] It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*

A. **Eighth Amendment Claim**

Bain's primary claim is that the defendants were deliberately indifferent to his medical needs. In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). A prisoner must therefore demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Both the objective and subjective components must be satisfied in order for a plaintiff to prevail. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment, the impact of the ailment upon an individual's daily activities, and the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.* The Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that

a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).

The subjective component requires evidence that the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553. Furthermore, "it is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

i. **Objective Prong**

Several defendants argue that Bain has not satisfied the objective prong of the Eighth Amendment test because he has failed to provide evidence of a serious medical

10

need. For support, they cite Bain's failure to provide testimony or documentation to show that upon his arrest in 2003, he was taking narcotics and Valium for pain. The defendants also argue that Bain has failed to show that he suffered injury as a result of their conduct.

Bain is decidedly vague about the nature of any narcotics prescription he may have had at the time of his arrest. In his verified complaint, he claims only that physicians "have for many years treated his chronic conditions with narcotic pain medications and Valium." (Doc. 135 at 5); *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."). Based upon this statement, he asks the Court to conclude that these medications were necessary at the time of his arrest, and that any failure to provide them was unconstitutional. However, this sort of conclusion in an affidavit is insufficient to defeat a motion for summary judgment. *See, e.g., Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") (citations omitted); *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996).

The defendants also contend that Bain's claim of a serious medical need should be dismissed because he has declined to respond to repeated requests, both formal and informal, for medical releases and medical documentation. Courts have held that such conduct may warrant dismissal of the case. *See, e.g., Davis v. Berge*, 2002 WL 32340879, at *15 (W.D. Wis. July 15, 2002) ("[Plaintiff] may not pursue a suit for damages for

11

injuries to his health and withhold his health records from defendants."). Notwithstanding Bain's alleged lack of cooperation in discovery, counsel for Dr. Cotton has reviewed DOC medical files and assembled a record of Bain's medical care spanning several years. (Doc. 181 at 8-12.) Those records do not support Bain's claim that he had been prescribed narcotics at the time of his arrest. In fact, the last record of a doctor actually prescribing medication for pain was a Valium prescription in 2001. *Id.* at 10.

Aside from the medication question, Bain nonetheless declares that he suffers from "serious chronic pain" and "symptoms of traumatic brain injury." (Doc. 135 at 4.) He provides no additional details about his alleged condition, leaving the Court to guess about severity, duration, and specific physical impacts. The Court assumes that Bain's spinal injuries resulted in back pain, which "can rise to a level of constitutional significance [] dependent upon the circumstances of the particular case presented." *Mendoza v. McGinnis*, 2008 WL 4239760 at *10 & n.16 (N.D.N.Y. Sept. 11, 2008); *see also Guarneri v. Hazzard*, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) (holding that severe back pain, especially if long-lasting, can amount to a serious medical need). Here, those "circumstances" are unclear.

Bain also claims that he suffered symptoms of detoxification for several weeks, but again fails to specify what those symptoms were, their severity, or how long they lasted. Even if he had set forth such symptoms, this Court has held that, in general, a failure to treat withdrawal symptoms that are of relatively short duration does not constitute an Eighth Amendment violation. *Avallone v. Hofmann*, 2009 WL 2957955, at *5 (D. Vt. Sept. 8, 2009). Because Bain does not support his claims of serious medical needs with

specific facts or records, the Court should find that he has failed to "come forward with enough evidence to support a jury verdict in [his] favor," and that the defendants are entitled to judgment as a matter of law on the objective prong of the Eighth Amendment test. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

### ii. Subjective Prong

Assuming, *arguendo*, that Bain's self-serving statements of pain are sufficient to survive summary judgment on the question of a medically serious condition, the Court should nonetheless reject his claim of deliberate indifference. The primary claim in this case is that mental health staff at the prisons failed to treat him under "prevailing standards." Bain appears to regard "prevailing standards" as treatment of pain with narcotics, and urges the Court to construe a sudden discontinuation of that treatment as deliberate indifference. However, absent evidence that there was a "discontinuation," it is difficult for the Court to conclude (1) that a prescription for narcotics was required to meet the standard of care for Bain's condition in 2003, and (2) that the Eighth Amendment required either the provision of narcotics or treatment for detoxification.

Furthermore, Bain is suing *mental* health professionals. Dr. Cotton is a psychiatrist, defendant Francis is alleged to be a psychiatric nurse practitioner, and defendant Cote explains in an affidavit that he too is a psychiatric nurse practitioner. Dr. Cotton states in his affidavit that "any claims by an inmate to be suffering from narcotics withdrawal or detoxification are medical issues that would be handled exclusively by medical staff." (Doc. 181-2 at 2.) Defendant Cote similarly attests that "as a psychiatric nurse practitioner working in the state corrections system, it would not have been my place

13

to prescribe, or even recommend, narcotics for an inmate and I would not have done so." (Doc. 183-5 at 4.)[1]

Moreover, the fact that these defendants did not address Bain's complaints to his satisfaction does not dictate a finding of deliberate indifference. To the contrary, the record evidence shows that Bain was provided mental health evaluations and, where appropriate, offers of care. For example, defendant Cote testifies in his affidavit that he "encouraged Plaintiff to follow up with prison medical services for pain management." (Doc. 183-5 at 3.) He also inquired as to whether Bain might be interested in a trial of antidepressants to manage anxiety. *Id.* Dr. Cotton reports that he completed Bain's psychiatric screening on July 6, 2003, at which time Bain was not displaying any signs of withdrawal from narcotics or Valium. (Doc. 181-2 at 2.) Bain's "mood appeared

---

[1]    In a separate lawsuit, Bain sued prison medical providers for failing to provide adequate treatment for his pain. In that case, the Court rejected his Eighth Amendment claim, concluding that

> once incarcerated, Bain received careful and considered treatment with respect to his pain management. This treatment included review of Bain's prescription regimen by doctors both inside and outside the prison system.
> . . .
>
> Bain's care was reviewed regularly, and various approaches were developed that did not involve high levels of narcotics. Indeed, despite Bain's claims to the contrary, more than one physician concluded that narcotics were not his best option. Nonetheless, Bain maintains that he should have received narcotic medications at the level prescribed . . . prior to his incarceration, and that anything less does not meet the prevailing medical standard.
>
> As discussed above, a claim of negligence does not equate to an Eighth Amendment claim. *Estelle*, 429 U.S. at 106. Moreover, Bain's disagreement with his treatment, and his consistent efforts to obtain higher levels of narcotics, do not render his care unconstitutional. *Id.* at 107; *Chance*, 143 F.3d at 703. There is no indication in the record that any of the defendants acted with deliberate indifference, or even that the care they provided was medically inadequate.

*Bain v. Gorczyk*, 2010 WL 1257646, at *6 (D. Vt. Feb. 19, 2010) (Report and Recommendation adopted in *Bain v. Gorzcyk*, 2010 WL 1257640 (D. Vt. Mar. 24, 2010)).

normal, his affect was appropriate and his thought processes were normal. Furthermore, I found Bain's attention and concentration to be normal." *Id.* He considered Bain's complaints of pain to be "drug-seeking behavior with the medical services team," and as a psychiatrist saw "no duty or obligation to advocate with the medical staff" for provision of narcotics. *Id.* at 2-3. Defendant Francis has reviewed the pertinent medical records, and states that there is no evidence of her having provided mental health services to Bain at any time. (Doc. 180-1 at 1.)

In sum, Bain is suing mental health care providers for failing to provide appropriate medical care. The undisputed evidence is that he needed to address his concerns with the prison medical staff, and not its mental health staff. The defendants instructed him to seek help from the medical staff, and there is no indication in the record that any defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally intefer[ed] with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. The defendants are therefore entitled summary judgment, and their motions to that effect should be GRANTED.

### III. "Prevailing Medical Standards" Claim

The defendants further argue that Bain's Eighth Amendment claims cannot succeed because he has failed to provide any expert testimony with regard to the relevant standards of care. The Second Circuit, however, has rejected the argument that a § 1983 plaintiff is required to offer expert testimony in support of a deliberate indifference claim.

> We have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony. The inquiry remains whether the treating physician or other prison official was

15

> deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law. Expert testimony certainly could have bolstered [the plaintiff's] case at trial, but the absence of such expert proof does not mandate dismissal of his action where the facts support a finding of deliberate indifference.

*Hathaway*, 37 F.3d at 68; *see also Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 191 (2d Cir. 2005); *Cumberbatch v. Port Auth. of New York and New Jersey*, 2006 WL 3543670, at *9 (S.D.N.Y. Dec. 5, 2006).

In addition to his constitutional claims, Bain's amended complaint cites 28 V.S.A. § 801, which requires the DOC to provide health care for inmates "in accordance with the prevailing medical standards." 28 V.S.A. § 801(a). He also accuses individual providers of failing to provide adequate care at the "prevailing standard." (Doc. 135 at 7-8.) The defendants have construed these claims as alleging medical malpractice, and again argue that without an expert, the claims do not survive summary judgment.

Under Vermont law, a plaintiff bringing a claim of medical malpractice must prove: (1) the proper standard of medical skill and care; (2) that the defendant either lacked the requisite knowledge or skill or failed to exercise this degree of care; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not have otherwise been incurred. 12 V.S.A. § 1908; *Lockwood v. Lord*, 163 Vt. 210, 213 (1994). "These elements must generally be proved by expert testimony." *Lockwood*, 163 Vt. at 213 (citing *Begin v. Richmond*, 150 Vt. 517, 520 (1988)); *see also Jones v. Block*, 171 Vt. 569, 569 (2000). "Except where the alleged violation of the standard of care is so apparent that it can be understood by a layperson without the aid of medical experts, the burden of proof imposed by [Vermont

16

medical malpractice statute] requires expert testimony." *Provost v. Fletcher Allen Health Care, Inc.*, 179 Vt. 545, 547 (2005).

In this case, Bain claims that his chronic pain and detoxification required specific treatments, including narcotics. Aside from his own conclusions, he has not offered any admissible evidence to show that his desired treatment was required by the "prevailing" standard of care. Furthermore, he has not offered any support for his claim that pain management was within the purview of mental health care professionals.

Dr. Cotton attests in his affidavit that he saw no reason to prescribe "psychotropic medications" to Bain in 2003 "given his nearly absent reported mental health symptoms." As to Bain's need for narcotics or detoxification treatment, Dr. Cotton states that "I had no duty or obligation to advocate with the medical staff on behalf of Mr. Bain to get narcotics or Valium in July, 2003. Any claim that I had such a duty is completely untrue and cannot be substantiated by any expert." (Doc. 181-2 at 2.) Bain has not produced an expert, and Dr. Cotton's statements are therefore unrefuted. William Cote has offered similar testimony, (Doc. 183-5 at 3-4), and his statements are also unchallenged. Cote's statements with respect to a duty to provide narcotics or other medical treatments apply equally to defendant Francis, who like Cote is a psychiatric nurse practitioner. The defendants are therefore entitled to summary judgment on any common law claim for medical malpractice, as well as a claim under 28 V.S.A. § 801.

IV. **Supervisory Defendants**

Defendants Gold and Hofmann served consecutively as Commissioner of the Vermont Department of Corrections during the period of time at issue in this case. The

amended complaint alleges that "[i]t is/was the [r]esponsibility of the Commissioner to timely provide medical/mental health care and treatment to Plaintiff in accordance with prevailing standards of care and within Constitutional strictures." (Doc. 135 at 2.) Because there is no claim that either Gold or Hofmann had personal contact with Bain, it is clear that Bain is suing these defendants in their roles as supervisors. Bain also brings a supervisory claim against William Cote, alleging that Cote supervised "the activities and services of the medical/mental health programs." *Id.* at 7.

For reasons set forth above, Bain's Eighth Amendment and medical malpractice claims, insofar as they are alleged against his mental health care providers, fail as a matter of law. Defendants Hofmann, Gold and Cote have submitted additional defenses to these claims. Beginning with Cote, he states in his affidavit that he never supervised "medical mental health programs" as alleged in the amended complaint. "Such activities would be outside the scope of my role as a psychiatric nurse practitioner." (Doc. 183-5 at 3.) Cote did review Bain's chart in January 2004. His written notation stated only that he had spoken with Bain's treatment team and that he would see Bain "on request or referral." *Id.* There is no suggestion in this notation that Cote was ever acting in a supervisory role. Bain has not offered any evidence to counter this testimony, and Cote is therefore entitled to summary judgment on any claim of supervisory liability.

Defendants Gold and Hofmann argue that Bain has failed to provide evidence of their personal involvement in his mental health care. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of*

18

*Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Again, it is plain that Gold and Hofmann are being sued because of their supervisory roles as DOC Commissioners. The Second Circuit has established that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on *respondeat superior*.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*.' *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983

suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, Bain does not allege any direct involvement by former Commissioners Gold and Hofmann. Nor does he contend that they had notice of his situation. There is no suggestion of a policy or custom of the DOC that sanctioned the alleged wrongdoing, and no allegation of grossly negligent supervision. Consequently, in addition to the reasons set forth above with respect to Bain's Eighth Amendment and medical malpractice claims, the motion for summary judgment filed by defendants Gold and Hofmann should be GRANTED.

## **Conclusion**

For the reasons set forth above, Bain's motion for extension of time (Doc. 195) is DENIED. I recommend that the defendants' motions for summary judgment (Docs. 180, 181, 182, 184 and 185) be GRANTED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 10th day of June, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).